**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————— x

RICHARD TSCHERNJAWSKI  and GARVASE : 
MCCULLOUGH, individually and on behalf of :
all others similarly situated, :      Case No. 1:25-cv-05930-CM
     :
     :
         Plaintiffs, :
v. :
     :      **AMENDED CLASS ACTION**
     :      **COMPLAINT**
MEDTECH PRODUCTS INC. a Delaware :
Corporation, and PRESTIGE CONSUMER :      **JURY TRIAL DEMANDED**
HEALTHCARE, INC., a Delaware Corporation, :
     :
         Defendants. :

—————————————————— x

        Plaintiff Richard Tschernjawski and Garvase McCullough ("Plaintiffs") brings this Class

Action Complaint against Defendants Medtech Products Inc. and Prestige Consumer Healthcare,

Inc. (hereinafter "Defendants"), individually and on behalf of all others similarly situated, and

complains and alleges upon personal knowledge as to himself and his own acts and experience

and, as to all other matters, upon information and belief, including investigation conducted by his

attorneys:

## NATURE OF THE ACTION

        1.    This action seeks to remedy the deceptive and misleading business practices of

Medtech Products Inc. and Prestige Consumer Healthcare, Inc. with respect to the manufacturing,

marketing, and sale of Defendants' Little Remedies® Honey Cough Syrup products throughout the

state of New York and throughout the United States (hereinafter the "Product").

2.      Defendants manufacture, advertise, market, label, distribute, and sell the Little Remedies branded pediatric dietary supplements. The Little Remedies products are marketed as pediatric alternative medicines, which treat a number of ailments.

3.      More specifically, Defendants market their Little Remedies Honey Cough Syrup (the "Product") as a dietary supplement that "soothes coughs day or night."  The label of the Product notes that the Product is safe and effective, noting that it is "Everything they need. Nothing they don't" and that the Product is made with the "the fewest and most natural ingredients without sacrificing the product's effectiveness."

4.      Defendants have improperly, deceptively, and misleadingly labeled and marketed their Product to reasonable consumers, like Plaintiff, by affirmatively highlighting the Product as safe for consumption while omitting and not disclosing to consumers on their packaging that the Product is contaminated with *Bacillus cereus*.  This bacterium causes food poisoning or more serious health issues.  This is particular concerning because the Product is marketed to sick children and infants.

5.       Consumers like Plaintiffs trust manufacturers such as Defendants to sell products that are safe and free from known harmful substances, including *Bacillus cereus*.  Indeed, Defendants market their Little Remedies products as safe and effective alternatives to other medicines.

6.      Plaintiffs and those similarly situated (hereinafter "Class Members") certainly expect that the cough and baby products they purchase will not contain, or risk containing, any knowingly harmful substances that cause severe disease and may even be life threatening.

7.      Unfortunately for consumers, like Plaintiffs, the Product they purchased from Defendants contain *Bacillus cereus*.  Thus, consumers would not have purchased the Product, or paid less, had they known about the *Bacillus cereus* contamination.

8.      Defendants are using a marketing and advertising campaign that omits from the packaging that the Product contains the *Bacillus cereus*. Knowing of the presence of the *Bacillus cereus* is material to reasonable consumers. Knowledge of the presence of the *Bacillus cereus* was solely within the possession of Defendants, and consumers could only obtain such information by sending the products off to a laboratory for extensive testing. This omission leads a reasonable consumer to believe they are not purchasing a product infected with bacteria when in fact they are purchasing the Product contaminated with *Bacillus cereus*.

9.      Defendants' own recall and other testing confirmed and demonstrated the presence of *Bacillus cereus* in Plaintiffs' products.

10.      While Defendants issued a recall of the Product on June 17, 2025 (the "Recall"), this Recall has not been effective.  The recall announcement instructs consumers who purchased the Product to stop using them immediately.  But, the Recall is purposely designed to prevent consumers from getting a refund for the contaminated and recalled Product.

11.      Accordingly, Defendants' conduct violated and continues to violate, inter alia, New York General Business Law §§ 349 and 350, California's Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code §17200., California's False Advertising Law ("FAL") Cal. Bus. & Prof. Code §17500, California's Consumer Legal Remedies Act ("CLRA") Cal. Civ. Code § 1750 et seq  and resulted in unjust enrichment to Defendants. Defendants also breached and continue to breach their warranties regarding the Product.

12.     Accordingly, Plaintiffs brings this class action on behalf of themselves and other similarly situated consumers.

## PARTIES

13.     Plaintiff Richard Tschernjawski is and was at all times relevant to this complaint a resident of Lafayette, New York.

14.     Plaintiff Garvase McCullough is and was at all times relevant to this complaint a resident of San Gabriel, California.

15.     Defendant Prestige Consumer Healthcare, Inc. is a Delaware Corporation with its principal place of business located at 660 White Plains Road Tarrytown, New York 10591.  Prestige Consumer Healthcare, Inc. markets, sells, manufactures, and distributes consumer healthcare products to retail outlets in the U.S., Canada, Australia, and certain other international markets.  It wholly owns Defendant Medtech Products Inc.  At all times relevant to this complaint, Defendant Prestige Consumer Healthcare, Inc. has transacted business in this judicial district and throughout the United States, including in New York and California.  Defendant Prestige Consumer Healthcare, Inc. is responsible for the manufacture, distribution, and sale of the Product.

16.     Defendant Medtech Products Inc. is a privately-held Delaware corporation with its principal place of business located at 660 White Plains Road Tarrytown, New York 10591.  Medtech Products Inc. manufactures, advertises, markets, labels, distributes, and sells the Little Remedies products.  It is a wholly owned subsidiary of Defendant Prestige Consumer Healthcare, Inc.  At all times relevant to this complaint, Medtech Products Inc. has transacted business in this judicial district and throughout the United States, including in New York and California.  Defendant Medtech Products Inc. is responsible for the manufacture, distribution, and sale of the Product.

## JURISDICTION AND VENUE

17.     This Court has personal jurisdiction over Defendants in this matter.  The acts and omissions giving rise to this action occurred in the state of New York,  Defendants have been afforded due process because they have, at all times relevant to this matter, individually or through their agents, subsidiaries, officers, and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised, distributed and/or sold products, committed a statutory violation with this state related to the allegations made herein, and caused injuries to Plaintiff and putative Class Members, which arose out of the acts and omissions that occurred in the state of New York, during the relevant time period, at which time Defendants were engaged in business activities in the state of New York.

18.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and Defendants are citizens of different states. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

19.     Under 28 U.S.C. § 1391, venue is proper in the Southern District of New York because Defendants conduct business in this District, both Defendants also maintain its principal place of business in this District, and both Defendants have intentionally availed themselves of the laws and markets within this District.

## FACTUAL ALLEGATIONS

**Defendants' Deceptive Conduct**

20.    Defendant Prestige Consumer Healthcare Inc. (formerly Prestige Brands, Inc.) markets, sells, manufactures, and distributes consumer healthcare products to retail outlets in the US, Canada, Australia, and certain international markets.  Defendant has several consumer facing brands, including Little Remedies.  The Little Remedies brand is specifically marketed as safe and effective dietary supplements, and other remedies, marketed for use on small children.  Defendant Medtech Products Inc. is the wholly owned subsidiary of Defendant Prestige Consumer Healthcare Inc. responsible for the Little Remedies brand.  Collectively, Defendants are responsible for the manufacturing, holding, distribution, marketing and sale of the Product.

21.    Generally, consumers have become increasingly concerned about the effects of ingredients in products that they insert into their bodies. This is particularly true of parents when purchasing products for their children.  Companies, such as Defendants, have capitalized on consumers' desire for symptom-relieving and pain-relieving products, and indeed, consumers are willing to pay, and have paid, a premium for these products

22.    Defendants understand that trust in the safety of the Product is critical to its sale. Parents are not willing to provide unsafe remedies to their sick children.  Accordingly, Defendants market their Little Remedies products as safety and effective.  Indeed, on Defendants' website, they state that "Little things matter to us too. Little Remedies® designs safe and reliable solutions just for babies. We pay attention to little details, like ensuring our products are free from parabens, artificial flavors, and dyes. To help your baby stay happy and healthy, we make sure they have everything they need. And nothing they don't."[1]

23.    Indeed, on their website, Defendants specifically advertise that the "Little Remedies® Honey Cough Syrup contains only 3 ingredients: honey for coughs, purified water to

---

[1] https://www.littleremedies.com/about-us (last visited on July 15, 2025).

make it easier to swallow, and a natural preservative. It's safe to use this cough medicine for kids 1-year old and up, as well as adults!"[2]

24.     Defendants continue to highlight the safety and effectiveness of the Product on its label.  Defendants label the Product that it is "Everything they need. Nothing they don't" and that the Product is made with the "the fewest and most natural ingredients without sacrificing the product's effectiveness."

25.     Through these advertisements, representations, and warranties, Defendants represent that the Product is a safe and effective dietary supplement, which can be sold as such. Defendants do not disclose that the Product contains unacceptable and harmful levels of bacteria, which renders the Product adulterated and illegal to sell.

26.     By marketing the Product as a dietary supplement, Plaintiffs and other Class members reasonably assume that they meet minimum federal safety criteria and are manufactured in compliance with FDA requirements for such products. *Corbett v. PharmaCare U.S., Inc*., 567 F. Supp. 3d 1172, 1199 (S.D. Cal. 2021) ("Advertising a product as a "dietary supplement" creates a reasonable impression to the consumer that it has been designated or has features of a supplement based on some criteria set by the FDA."). Additionally, Plaintiffs and other Class members further reasonably assumed the Product would be manufactured to minimum standards established within the industry, pass without objection in the trade under the contract description, and are fit for the ordinary purposes for which such goods are used.

27.     As the manufacturer and distributor of the Product, Defendants have a duty to ensure that they comply with Current Good Manufacturing Practice ("CGMP") regulations and ensure their Product meets minimum safety standards.

---

[2] https://www.littleremedies.com/remedies/cough-remedies/little-remedies-honey-cough-syrup (last visited on July 15, 2025).

28.     The CGMP regulations for dietary supplements contain minimum requirements for the methods, facilities, and controls used in manufacturing, processing, packing, and holding of a dietary supplement. The regulations ensure that a product is safe for use, and that it has the ingredients, to their respective degrees of strength and purity, it claims to have.  Accordingly, the CGMP regulations represent the minimum quality controls required in the industry.  For example, Defendants "must take all the necessary precautions during the manufacture of a dietary supplement to prevent contamination of components or dietary supplements," including "manufacturing operations under conditions and controls that protect against the potential for growth of microorganisms and the potential for contamination" and "holding components and dietary supplements that can support the rapid growth of microorganisms of public health significance in a manner that prevents the components and dietary supplements from becoming adulterated."  21 C.F.R. § 111.365. Defendants must also test a subset of its finished products to ensure that the "finished batch of the dietary supplement meets product specifications for identity, purity, strength, composition, and for limits on those types of contamination that may adulterate or that may lead to adulteration of the finished batch of the dietary supplement."  21 C.F.R § 111.75(c).

29.     Moreover, both state and federal law prohibit the sale of adulterated foods, including dietary supplements. N.Y. Agric. & Mkts. Law § 199-a (McKinney); Cal. Health & Safety Code §§ 110560-65, 110620; 21 U.S.C. §§  331(a), 342(a).

30.     Accordingly, under the CGMP regulations and state law, Defendants have a duty to ensure that their products do not become adulterated with known harmful substances, including *Bacillus cereus*.  Defendants knew or should have known that their Product has harmful substances, including *Bacillus cereus*, before it was distributed to the public, because they are required to test

for these contaminants as part of the manufacturing process.  Nonetheless, the Product, adulterated with *Bacillus cereus* was released to consumers.

31.    *Bacillus cere* is a common bacterium, present ubiquitously in the environment. *Bacillus cereus* is a toxin-producing gram-positive bacterium known to be found in soil, vegetation, and food.    It can quickly multiply at room temperature with an abundantly present preformed toxin.  That there are an estimated 63,400 episodes of *B cereus* illness annually in the United States. Accordingly, *Bacillus cere* is a well-known food adulterant, which must be controlled and tested for by manufacturers of foods, including dietary supplements.[3]

32.    *Bacillus cere* commonly causes intestinal illnesses with nausea, vomiting, and diarrhea.  However, it has been associated with serious infections in immunocompromised hosts and can cause septicemia as well as endophthalmitis, which can lead to vision loss.  While its symptoms are often mild, it can be more severe in children, especially sick children.  Accordingly, contamination of children's cough remedies with *Bacillus cere* is a particular concern.

33.    Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as the *Bacillus cere*, especially at the point of sale, and therefore must and do rely on Defendants to truthfully and honestly report what the Product contains or are at risk of containing on the Product's packaging or labels.

34.    Here, Defendants have conceded that the Product is contaminated with *Bacillus cere* and should not have been sold.  On June 17, 2025, Defendants recalled the Product noting that it had been contaminated with *Bacillus cereus* and lost its shelf-stability.  Defendants state that consumers who have purchased the recalled Product should stop using it immediately.

---

[3] https://www.ncbi.nlm.nih.gov/books/NBK459121/#:~:text=Bacillus%20cereus %20is%20a%20toxin,an%20abundantly%20present%20preformed%20toxin. (last visited on July 15, 2025).

35.     Defendants represent and warrant that the Product is safe and effective, and that it could be sold as dietary supplement, meaning that it meets the minimum safe requirements required. Additionally, such representations also require Defendants to disclosure that the Product has become adulterated, due to the partial representations regarding the Product being safe and effective, as well as being legal dietary supplements.  Nonetheless, the recalled Product is not safe and effective, nor could it be of merchantable quality or fit for its particular purpose, because it is adulterated and cannot be used.

36.     Defendants had exclusive knowledge regarding the *Bacillus cere* contamination. Defendants are large and sophisticated corporations that have been in the business of producing, manufacturing, selling, and distributing health products for many years, including producing and manufacturing the contaminated Product. Defendants were responsible for the manufacture and testing of the Product.  Thus, Defendants are in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of their Product and possesses unique and superior knowledge regarding the manufacturing process of the Product, the manufacturing process of the ingredients and raw materials the Product contains, and the risks associated with those processes, such as the risk of contamination, as well as the ability to test the Product for contamination prior to releasing the Product into the stream of commerce. Such knowledge is solely within the possession of Defendants.  Therefore, Defendants alone knew of the contents of the Product.  Such knowledge is not readily available to consumers like Plaintiffs and Class Members.

37.     Defendants have a duty to provide consumers, like Plaintiffs and Class Members, with accurate information about the contents of the Product.

38.     Therefore, Defendants' false, misleading, and deceptive omissions regarding the Product containing the *Bacillus cere* contamination are likely to continue to deceive and mislead

10

reasonable consumers and the public, as they have already deceived and misled Plaintiffs and the Class Members.

39.     Defendants' misrepresentations and omissions were material and intentional because people are concerned with what is in the products that they ingest, and their children ingest, particularly their sick children. Consumers such as Plaintiffs and the Class Members are influenced by the marketing and advertising campaign, the Product's labels, and the listed ingredients and directions/uses on the label. Defendants know that if they had not omitted that the Product contained the *Bacillus cere,* then Plaintiffs and the Class would not have purchased the Product, or, at the very least, would not have paid nearly as much for the Product.

40.     Consumers rely on marketing and information to make purchasing decisions.

41.     By omitting that the Product includes the *Bacillus cere* on the labels of the Product throughout the Class Period, Defendants know that those omissions are material to consumers since they would not purchase a product that contained the *Bacillus cere.*

42.     Defendants' deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

43.     Defendants' false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiffs and the Class Members.

44.     In making the false, misleading, and deceptive representations and omissions described herein, Defendants knew and intended that consumers would pay a premium for a product marketed without the *Bacillus cere* over comparable products not so marketed.

45.     As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representation and omission, Defendants injured Plaintiffs and the Class Members.  Had Defendants not made the false, misleading, and deceptive representations and omissions, Plaintiffs and the Class Members would not have been willing to pay the same amount for the Product they purchased and/or Plaintiffs and the Class Members would not have been willing to purchase the Product.

46.     Plaintiffs and the Class Members paid for a Product that does not contain *Bacillus cere*. Since the Product does indeed or possibly contains *Bacillus cere*, the Product Plaintiffs and the Class Members received was worth less than the Product for which they paid.

47.     Plaintiffs and the Class Members all paid money for the Product; however, Plaintiffs and the Class Members did not obtain the full value of the advertised Product due to Defendants' misrepresentations and omissions. Plaintiffs and the Class Members purchased, purchased more of, and/or paid more for, the Product than they would have had they known the truth about the Product. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendants' wrongful conduct.

48.     Plaintiffs and Class Members saw the Product's packaging prior to purchasing the Product. Had Plaintiffs and Class Members known the truth about the Product, *i.e.*, that it does or possibly contains *Bacillus cere*, they would not have been willing to purchase it at any price, or, at minimum, would have paid less for it.

**Defendants' Recall is Insufficient**

49.     Defendants issued a recall of their Product on June 17, 2025 because several lots of the Product had become contaminated with *Bacillus cereus* and lost its shelf-stability.  The Recall specifically provides that consumers with questions or refund requests are directed to "contact

Medtech *via* e-mail at medicalaffairs@prestigebrands.com, through its website at https://www.prestigebrands.com/contact, or by phone at (800) 754-8853 on Monday – Friday 8:30-5:30 eastern time."

50.    Here, Defendants did not provide adequate notice of the recall.  Defendants did little more than post the Recall on their website and issue the most minimal press release. Accordingly, it is highly unlikely that consumers would receive notice of the Recall, and even less likely the consumer would be aware of the remedies provided thereunder.  Defendants are well aware that recall notices such as the one in this case reach a very small fraction of consumers.

51.    Additionally, Defendants do not provide a simple form that can be submitted online or by mail for a refund.  Defendants are aware most individuals will not call or email for additional instructions on how to receive a refund.  Indeed, the contact information provided (such as https://www.prestigebrands.com/contact and (800) 754-8853) is Defendants' general consumer service lines for the Little Remedies products.  These lines of communication are not properly staffed, leading to long wait times for responses or wait times on the phone.  This specifically dissuades most consumers from seeking relief under the recall.

52.    Defendants also do not inform consumers (at least until they contact Defendants through email or by phone) that they are required to take a picture of the Product (including the lot number) and provide proof of purchase to receive a refund.  Any consumer who is made aware of the Recall will be predisposed to throwing the Product away. This would eliminate entitlement to a refund, even if the consumer maintained proof of purchase.

53.    Unlike the situation with nearly all class action resolutions, here, individuals with proof of purchase who have discarded the product are not entitled to a refund.

54.     Accordingly, Defendants' Recall is designed to reach very few people and designed to benefit very few of the consumers who purchased the Product.

55.     The class action remedy is superior to Defendants' failed Recall in every conceivable fashion.

56.     Plaintiffs and other consumers purchased the Product under the reasonable impression that it was free of *Bacillus cereus* contamination. Because Plaintiffs was misled into purchasing Product that contain the *Bacillus cereus* and is hazardous to human health, they are entitled to the opportunity to receive a full refund. Defendants' Recall is specifically designed to limit this recourse to consumers.

## **PLAINTIFFS' FACTUAL ALLEGATIONS**

57.     After reviewing information about Product, Plaintiff Richard purchase the Product for $10.00 at a retail store in Lafayette, New York around March 2025.  As a result of Defendants' material misrepresentations and omissions, Plaintiff Richard purchased the Product because he reasonably believed the Product was safe and effective, and was a dietary supplement which could be marketed and sold within the United States.  Indeed, Plaintiff Richard specifically purchased the Product for his sick grandchild.  Plaintiff Richard would not have purchased the Product, or would have paid less for it, had he known that the Product was adulterated with *Bacillus cereus.* Plaintiff Richard would purchase the Product again, if he could be ensured that it was not adulterated with *Bacillus cereus* and was manufactured in compliance with CGMP regulations.

58.     After reviewing information about Product, Plaintiff Garvase purchase the Product for $12 at a retail store in San Gabriel, California around the start of 2025.  As a result of Defendants' material misrepresentations and omissions, Plaintiff Garvase purchased the Product because she reasonably believed the Product was safe and effective, and was a dietary supplement

which could be marketed and sold within the United States.  Indeed, Plaintiff Garvase specifically

purchased the Product for her sick kids and nephews.  Plaintiff Garvase would not have purchased

the Product, or would have paid less for it, had she known that the Product was adulterated with

*Bacillus cereus*.  Plaintiff Garvase would purchase the Product again, if she could be ensured that

it was not adulterated with *Bacillus cereus* and was manufactured in compliance with CGMP

regulations

## CLASS ACTION ALLEGATIONS

59.    Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3).  Plaintiffs

brings this action on behalf of a proposed National Class, Multi-State Class, New York Subclass

and California Subclass, defined as follows:

**National Class**

During the fullest period allowed by law, all persons residing in the United States who
purchased the Product subject to the Recall.

**Multi-State Class**

During the fullest period allowed by law, all persons residing in the states listed below who
purchased the Product subject to the Recall.

**New York Subclass**

During the fullest period allowed by law, all persons residing in the state of New York who
purchased the Product subject to the Recall.

**California Subclass**

During the fullest period allowed by law, all persons residing in the state of California who
purchased the Product subject to the Recall.

Excluded from the Classes are (a) any person who purchased the Product for resale and not for

personal or household use, (b) any person who signed a release of any Defendants in exchange for

consideration, (c) any officers, directors or employees, or immediate family members of the

officers, directors or employees, of any Defendants or any entity in which a Defendants have a controlling interest, (d) any legal counsel or employee of legal counsel for any Defendants, and (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

60.    Plaintiffs reserves the right to amend the definitions of the Classes if discovery or further investigation reveals that the Subclass should be expanded or otherwise modified.

61.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

62.    **Predominance of Common Questions of Law and Fact – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are limited to, the following:

     a.    Whether the Product are adulterated;

     b.    Whether Defendants' packaging, labeling, marketing, advertising, and/or other promotional materials for the Product are deceptive, unfair, or misleading;

     c.    Whether Defendants' acts, omissions, or misrepresentations of material facts violate certain state deceptive practice acts, including those of New York and California;

     d.    Whether Defendants breached express warranties in connection with the Product;

     e.    Whether Defendants breached implied warranties in connection with the Product;

     f.    Whether Defendants' acts, omissions, or misrepresentations of material facts

constitute fraud;

g.  Whether Defendants' acts, omissions, or misrepresentations of material facts constitute a breach of contract or common law warranty;

h.  Whether Plaintiffs and putative Class Members have suffered an ascertainable loss of monies or property or other value as a result of Defendants' acts, omissions, or misrepresentations of material facts;

i.  Whether Defendants were unjustly enriched at the expense of Plaintiffs and putative Class Members in connection with the Product;

j.  Whether Plaintiffs and putative Class Members are entitled to monetary damages and, if so, the nature of such relief; and

k.  Whether Plaintiffs and putative Class Members are entitled to equitable, declaratory, or injunctive relief and, if so, the nature of such relief.

63.    Pursuant to Rule 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the putative Class, thereby making final injunctive or corresponding declaratory relief appropriate with respect to the putative Class as a whole.  In particular, Defendants have manufactured, packaged, labeled, marketed, advertised, distributed and sold the Product, which are deceptively misrepresented as "clinically proven to shorten colds."

64.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical of the claims of the Members of the Class, as each putative Class Member was subject to the same uniform deceptive misrepresentation and warranties.    Plaintiffs shares the aforementioned facts and legal claims or questions with putative Class Members, and Plaintiffs and all putative Class Members have been similarly affected by Defendants' common course of conduct alleged herein. Plaintiffs and all putative Class Members sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendants' deceptive misrepresentation and breach of warranty.

65.    **Adequacy – Federal Rule of Civil Procedure 23(a)(4).**  Plaintiffs will fairly and

adequately represent and protect the interests of the putative Class.

66.     Plaintiffs have retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiffs and their counsel are committed to the vigorous prosecution of this action. Plaintiffs does not have any conflicts of interest or interests adverse to those of putative Class Members.

67.     **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a class action, Class Members will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendants. Accordingly, the proposed Class satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

68.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and all Members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class Members as a whole.

69.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

> l.     The damages suffered by each individual putative Class Member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct;

18

m.  Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

n.  The claims presented in this case predominate over any questions of law or fact affecting individual Class Members;

o.  Individual joinder of all putative Class Members is impracticable;

p.  Absent a Class, Plaintiffs and putative Class Members will continue to suffer harm as a result of Defendants' unlawful conduct; and

q.  This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and putative Class a Members can seek redress for the harm caused by Defendants.

70.  In the alternative, the Class may be certified for the following reasons:

r.  The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants;

s.  Adjudications of individual Class Members' claims against Defendants would, as a practical matter, be dispositive of the interests of other putative Class Members who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

t.  Defendants have acted or refused to act on grounds generally applicable to the putative Class, thereby making appropriate final and injunctive relief with respect to the putative Class as a whole.

## **COUNT I**
### **Violation of New York GBL § 349**
### **(On Behalf of Plaintiff Rick and the New York Subclass Members)**

71.  Plaintiff Rick repeats and realleges the allegations in paragraphs 1 through 69 as if fully set forth herein.

72.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

73.     The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff Rick and the New York Subclass Members seek monetary damages against Defendant.

74.     There is no adequate remedy at law.

75.     Defendants misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

76.     Defendants' improper consumer-oriented conduct—including failing to disclose that the Product contain the bacteria *Bacillus cereus* —is misleading in a material way in that it, inter alia, induced Plaintiff and the New York Subclass Members to purchase Defendants' Product and to use the Product when they otherwise would not have. Defendants made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

77.     Plaintiff Rick and the New York Subclass Members have been injured since they purchased a Product that was mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff Rick and the New York Subclass Members received less than what they bargained and paid for.

78.     Defendants' advertising and Product's packaging and labeling induced Plaintiff Rick and the New York Subclass Members to buy Defendants' Product.

79.     Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

80.    As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, interest, and attorneys' fees and costs.

## <u>COUNT II</u>
**Violation of New York GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

81.    Plaintiff Rick repeats and realleges the allegations in paragraphs 1 through 69 as if fully set forth herein.

82.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

83.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

84.    Defendants' labeling and advertisements contain untrue and materially misleading statements and omissions concerning their Product since they misrepresent that the Product is safe for use and doesn't list that the Product contains the bacteria *Bacillus cereus*.

85.    Plaintiff Rick and the New York Subclass Members have been injured since they saw the labeling, packaging, and advertising and purchased a Product that was mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff Rick and the New York Subclass Members received less than what they bargained and paid for.

86.    Defendants' advertising, packaging, and Product's labeling induced Plaintiff and the New York Subclass Members to buy Defendants' Product.

87.    Defendants made the untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

88.    Defendants' conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

89.    Defendants made the material misrepresentations described in this Complaint in their advertising and on the Product's  packaging and labeling.

90.    Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Product were and continue to be exposed to Defendants' material misrepresentations.

91.    As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, interest, and attorneys' fees and costs.

## COUNT III
### Breach of Express Warranty
### (On Behalf of Plaintiff and the Classes)

92.    Plaintiffs repeats and realleges the allegations in paragraphs 1 through 69 as if fully set forth herein.

93.    Plaintiffs brings this claim individually and on behalf of all similarly situated Class Members.

94.    Defendants, as the designers, manufacturers, packagers, labelers, marketers, distributors, and/or sellers expressly warranted that the Product were fit for their intended purpose by expressly warranting that the Product would "sooth cough" and were safe to use for children

22

over the age of one on the label of the Product. Additionally, Defendants warranted that the Product was, and could be sold as, a dietary supplement.

95.    Defendants made the foregoing express representation and warranty to all consumers, which became the basis of the bargain between Plaintiffs, Class Members, and Defendants.

96.    In fact, the Product is not fit for such purpose because the express warranty is a false, deceptive, and misleading misrepresentation. The Product is adulterated, was not manufactured or tested in compliance with CGMP, and was not safe for human consumption, particularly for the sick children it was advertised to help.

97.    Defendants breach their warranty and/or contract obligations by placing the Product into the stream of commerce and selling it to consumers. The fact that the Product has been recalled is an admission that the Product is unfit for its intended use and purpose, can not be sold as a dietary supplement, and substantially and/or completely impairs the use and value of the Product.

98.    Defendants were on notice of the aforementioned breaches of the above-described warranties via notice letters served upon and accepted by Defendants' counsel on July 17, 2025.

99.    Plaintiffs and Class Members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Product if they had known the truth about the Product.

**COUNT IV**
**Breach of Contract/Common Law Warranty**
**(On Behalf of Plaintiffs and the Classes)**

100.    Plaintiffs repeats and realleges the allegations in paragraphs 1 through 69 as if fully set forth herein.

101.    Plaintiffs brings this claim individually and on behalf of all similarly situated Class Members.

102.    To the extent Defendants' commitment is deemed not to be a warranty under UCC 2-313, Plaintiffs pleads in the alternative under common law warranty and contract law.

103.    Plaintiffs and Class Members purchased the Product through retailers such as Walgreens, CVS, Duane Reed, Target, and Walmart, among others.

104.    Defendants, as the designers, manufacturers, packagers, labelers, marketers, distributors, and/or sellers expressly warranted that the Product were fit for their intended purpose by expressly warranting that the Product would "sooth cough" and were safe to use for children over the age of one on the label of the Product.  Additionally, Defendants warranted that the Product was, and could be sold as, a dietary supplement.

105.    Defendants expressly warranted that the Product was fit for their intended purpose in that the Product was not safe for human consumption, particular by ill children.

106.    In fact, the Product is not fit for such purpose because the express warranty is a false, deceptive, and misleading misrepresentation.  The Product is adulterated, was not manufactured or tested in compliance with CGMP, and was not safe for human consumption, particularly for the sick children it was advertised to help.

107.    Defendants breach their warranty and/or contract obligations by placing the Product into the stream of commerce and selling them to consumers.  The fact that the Product has been recalled is an admission that the Product is unfit for its intended use and purpose, and substantially and/or completely impairs the use and value of the Product.

108.    Plaintiffs and Class Members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Product if they had known the

truth about the Product.

## COUNT V
### Breach of Implied Warranty of Merchantability
### (On Behalf of Plaintiffs and the Classes)

109.    Plaintiffs repeats and realleges the allegations in paragraphs 1 through 69 as if fully set forth herein.

110.    Plaintiffs brings this claim individually and on behalf of all similarly situated Class Members.

111.    Defendants specifically deal in dietary supplements and other medical remedies, including through their manufacturing, distribution, and sale of the Little Remedies products.

112.    Defendants, as the designers, manufacturers, packagers, labelers, marketers, distributors, and/or sellers of the Product, impliedly warranted that the Product was merchantable, *i.e.* the Product could be sold as a dietary supplement, and is fit for its ordinary purpose, *i.e.* the Product would safely "sooth cough" and was safe to use for children over the age of one.

113.    In fact, the Product is not fit for such purpose or merchantable because the Product is adulterated, was not manufactured or tested in compliance with CGMP, and was not safe for human consumption, particularly for the sick children it was advertised to help.

114.    As a proximate result of Defendants' above-described breach of implied warranty, Plaintiffs and Class Members have sustained damages in an amount to be determined at trial.

## COUNT VI
### Violation of Various Consumer Protection Laws
### (On Behalf of the Multi-State Class)

115.    Plaintiffs repeats and realleges the allegations in paragraphs 1 through 69 as if fully set forth herein.

116.    Plaintiffs brings this claim individually and on behalf of all similarly situated Class Members.

117.    Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in their marketing, advertising, and labeling of the Product.

118.    Had Defendants not engaged in the false and deceptive conduct described above, Plaintiffs and Class Members would not have purchased the Product.

119.    Defendants' false and deceptive representations and material omissions to consumers and the public, including Plaintiffs, constituted unfair and deceptive acts and practices in violation of the state consumer protection statutes listed below:

    a.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, *et seq*.;

    b.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1522, *et seq*.;

    c.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, *et seq*.;

    d.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. § 6-1-105, *et seq*.;

    e.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 2-1 10a, *et seq*.;

    f.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code §§ 2511, et seq. and 2531, *et seq*.;

    g.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code § 28-3901, *et seq*.;

h.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, *et seq*.;

i.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480-1, *et seq*.;

j.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, *et seq*.;

k.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILCS §505/1, *et seq*.;

l.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, *et seq*.;

m.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.170, *et seq*.;

n.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, *et seq*.;

o.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, *et seq*.;

p.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Comp. Laws Ann. § 445.90 1, *et seq*.;

q.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. §§ 325D.43, *et seq*.; 325 F.67, *et seq*.; and 325F.68 *et seq*.;

r.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vernon's Ann. Missouri Stat. § 407.010, *et seq*.;

s.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MT Code § 30-14-101 et *seq*.;

t.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq*.;

u.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. Ann. § 598.0903, *et seq*.;

v.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq*.;

w.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Rev. Stat. § 56:8-1, *et seq*.;

x.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. § 57-12-1, *et seq*.;

y.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law §§ 349 et seq. and 350-e, *et seq*.;

z.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code §§ 51-12-01, *et seq*., and 51-15-01, *et seq*.;

aa. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. § 15 751, *et seq*.;

bb. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 6464.605, *et seq*.;

cc. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, *et seq*.;

dd. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws. § 6-13.1-1, *et seq*.;

ee. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, *et seq*.;

ff. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Codified Laws § 37-24-1, *et seq*.;

gg. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code Ann. § 47-18-101, *et seq*.;

hh. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-11-1, *et seq*.;

ii. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 9 Vt. § 2451, *et seq*.;

jj. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et seq*.;

kk. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code. § 19.86.010, *et seq*.; and

ll. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20, *et seq*.

120. Plaintiffs and Class Members reasonably relied upon Defendants' misrepresentations and/or omissions in buying the Product.

121. Plaintiffs will provide any required notice to appropriate entities regarding Defendants' unfair and deceptive trade practices.

122.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the Class are entitled to compensatory damages, treble damages, attorneys' fees and the costs of this suit.

### COUNT VII
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Classes)**

123.     Plaintiffs repeats and realleges the allegations in paragraphs 1 through 69 as if fully set forth herein.

124.     Plaintiffs brings this claim individually and on behalf of all similarly situated Class Members.

125.     By their wrongful acts and omissions described within this complaint, including the deceptive packaging, labeling, marketing, advertising, distribution, and sale of the Product as alleged herein.

126.     Plaintiffs and Class Members' detriment and Defendants' enrichment were related to and flowed from the wrongful conduct challenged in this complaint.

127.     Defendants have profited from their unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and Class Members under circumstances in which it would be unjust for Defendants to be permitted to retain the benefit.  It would be inequitable for Defendants to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with the deceptive packaging, labeling, marketing, advertising, distribution, and sale of the Product.

128.     Plaintiffs and Class Members have been damaged as a direct and proximate result of Defendants' unjust enrichment because they would not have purchased the Product had they known that the Product was adulterated.

129.    Defendants knew and intended that Plaintiffs and Class Members would make payments for the Product based on the belief that the Product were safe and effective cough treatments, as represented by Defendants in advertising and marketing, on Defendants' website, and on the labels and packaging.  It is inequitable for Defendants to retain the benefit of payments obtained through false and misleading representations.

130.    Plaintiffs and Class Members are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants.

131.    When required, Plaintiffs and Class Members are in privity with Defendants because Defendants' sale of the Product was through authorized sellers. Purchase through authorized sellers is sufficient to create such privity because such authorized sellers are Defendants' agents for the purpose of the sale of the Product.

132.    As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants for their inequitable and unlawful conduct.

<u>**COUNT VIII**</u>
**Violation of California Business & Professions Code §§ 17200 ET SEQ.**
**Unfair And Fraudulent Prongs Of California's UCL**
**(On Behalf of the National Class, Plaintiff Garvase and the California Subclass)**

133.    Plaintiff Garvase repeats and realleges the allegations in paragraphs 1 through 69 as if fully set forth herein.

134.    Plaintiff Garvase brings this claim individually and on behalf of all members of the National Class and also brings this claim individually and on behalf of the California Subclass against Defendants.

135.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

136.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants as alleged herein constitute business acts and practices.

137.    Unlawful: The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws: the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* and the Consumers Legal Remedies Act, Cal. Civ. Code. §§ 1750 *et seq.*; and federal and state CGMP/food safety regulations.

138.    Unfair: Defendants' conduct with respect to the labeling, advertising, and sale of the Products was "unfair" because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

139.    Defendants' conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of the Consumers Legal Remedies Act and the False Advertising Law.

140.    Defendants' conduct with respect to the labeling, advertising, and sale of the Products was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

141.    Fraudulent: A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test. As set forth in detail

above, Defendants have fraudulently labeled its Products as they have made false and misleading statements that are likely to mislead reasonable consumers.

142.   Defendants profited from its sale of the falsely, deceptively, and unlawfully advertised and packaged Products to unwary consumers.

143.   Plaintiff Garvase seeks an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.

144.   Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs' desire to purchase the Products in the future if they can be assured that the Products are properly labeled and manufactured.

145.   Additionally, Plaintiff Garvase seek restitution if monetary damages are not available. Indeed, restitution under the UCL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff Garvase and the Class. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

146.   On behalf of themselves and the Class, Plaintiff Garvase also seek an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

## COUNT IX
### California's False Advertising Law Cal. Bus. & Prof. Code § 17500 ("FAL")
### (On Behalf of the National Class and California Subclass)

147.   Plaintiff Garvase repeats and realleges the allegations in paragraphs 1 through 69 as if fully set forth herein.

148.     Plaintiff Garvase brings this claim individually and on behalf of all members of the National Class and also brings this claim individually and on behalf of California Subclass against Defendants.

149.     The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

150.     As alleged in detail above, the advertisements, labeling, policies, acts, and practices of Defendants relating to the Products misled consumers acting reasonably regarding the content within said Products.

151.     Plaintiff Garvase and the Class Members suffered injury in fact as a result of Defendants' actions as set forth herein because they purchased the Products in reliance on Defendants' labeling claims, when such claims were false and without knowledge that the Products contained the *Bacillus cereus* bacteria.

152.     Defendants' business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendants have advertised the Products in a manner that is untrue and misleading, which Defendants knew or reasonably should have known, and omitted material information from its advertising.

153.     Defendants profited from its sale of the falsely and deceptively advertised Products to unwary consumers.

154.    Plaintiff Garvase seeks an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.

155.    Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs' desire to purchase the Products in the future if they can be assured that the Products are properly labeled and safe to consume.

156.    Additionally, Plaintiff Garvase seeks restitution if monetary damages are not available. Indeed, restitution under the FAL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiffs and the Subclass. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

157.    On behalf of herself and the Class, Plaintiff Garvase also seek an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition

### <u>COUNT X</u>
**California's Consumer Legal Remedies Act Cal. Civ. Code § 1750 et seq. ("CLRA")**
**(On Behalf of the California Subclass)**

158.    Plaintiff Garvase reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

159.    Plaintiff Garvase brings this claim individually and on behalf of the members of the California Subclass against Defendants.

160.    Defendants are a "person" under the CLRA, Cal. Civ. Code § 1761(c).

161.    Plaintiff Garvase and California Subclass members are "consumers" under the CLRA, Cal. Civ. Code § 1761(d).

162.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

163.    Defendants' false and misleading labeling and other policies, acts, omissions, non-disclosure and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff Garvase and California Subclass Members, and violated and continue to violate the following sections of the CLRA:

   a.   § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

   b.   § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

   c.   § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

164.    Defendants profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

165.    Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

166.    Pursuant to the provisions of Cal. Civ. Code § 1782(a), concurrently with the filing of this Complaint, Plaintiff Garvase, through counsel, mailed Defendants a letter by certified mail addressed to its headquarters, providing notice of Defendants' alleged violations of the CLRA, demanding that Defendants correct such violations, and providing Defendants with the opportunity

to correct its business practices. Plaintiff Garvase specifically identified which provisions of Cal. Civ. Code § 1770 Defendants had violated.

167.    Pursuant to California Civil Code § 1780, Plaintiff Garvase seeks injunctive relief, his reasonable attorneys' fees and costs, and any other relief that the Court deems proper. Should Defendant not respond to Plaintiff Garvase's CLRA Demand Letter, Plaintiff will amend his complaint to seek additional monetary relief, which may include statutory damages

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly situated Class Members, prays for relief and judgment, including entry of an order:

A.    Declaring that this action is properly maintained as a class action, certifying the proposed Class, appointing Plaintiffs as Class Representative and appointing Plaintiffs counsel as Class Counsel;

B.    Directing that Defendants bear the costs of any notice sent to the Class;

C.    Awarding Plaintiffs and Class Members actual damages, restitution and/or disgorgement;

D.    Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

E.    Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

F.    Awarding Plaintiffs and Class Members statutory damages, as provided by the applicable state consumer protection statutes invoked above;

G.    Enjoining Defendants from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

H.    Awarding Plaintiffs and Class Members restitution of the funds that unjustly enriched Defendants at the expense of Plaintiffs and Class Members;

I.    Awarding Plaintiffs and Class Members pre- and post-judgment interest;

J.    Awarding attorneys' fees and litigation costs to Plaintiffs and Class Members; and

K.    Ordering such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demands a trial by jury of all claims in this complaint so triable.


Dated: August 14, 2025                    Respectfully submitted,

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**

By: _s/  Russell M. Busch_

Russell M. Busch
405 E. 50th Street
New York, NY 10022
Tel: (630) 796-0903
Email: rbusch@milberg.com

Jason P. Sultzer, Esq.
Daniel Markowitz
**SULTZER & LIPARI, PLLC**
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
Email: sultzerj@thesultzerlawgroup.com
         Markowitzd@thesultzerlawgroup.com

Nick Suciu III*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: (313)303-3472
Email: nsuciu@milberg.com

* _Pro hac vice_ application forthcoming

_Counsel for Plaintiffs and the Class_

## AFFIDAVIT OF GARVASE McCULLOUGH

I, Garvase McCullough, declare as follows:

    1.    I am the Plaintiff in the referenced case and specifically the Plaintiff in the cause of action for violations of the Consumer Legal Remedies Act.  I am a competent adult, over eighteen years of age, and a resident of the State of California.  I am making this declaration in support of my Class Action Complaint.

    2.    I purchased the Little Remedies Honey Cough Syrup in a retail store located at San Gabriel, California in or around the start of 2025. As such, the transaction which gives rise to this complaint occurred within the Los Angeles County. Additionally, Defendant advertises and retails Little Remedies Honey Cough Syrup in the Los Angeles County, thus Defendant conducts substantial business within this County.

    3.    Accordingly, pursuant to California Code of Civil Procedure, section 1780, Central District of California is the proper venue for Plaintiff's California Consumer Legal Remedies Act claims.

    I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

    Executed on <u>08/05/2025</u> in <u>San Gabriel, CA</u>.


Garvase G. McCullough (Aug 5, 2025 14:53:34 PDT)

Garvase McCullough

# Affidavit Garvase

**Final Audit Report**                                                2025-08-05

| | |
|---|---|
| Created: | 2025-08-05 |
| By: | Luis Cardona (lcardona@brysonpllc.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAFs7P7KkwU19CwpoHI8WthJDJ2vNMoQI_ |

## "Affidavit Garvase" History

📄 Document created by Luis Cardona (lcardona@brysonpllc.com)
   2025-08-05 - 5:20:33 PM GMT

📧 Document emailed to mcculloughgarvase@gmail.com for signature
   2025-08-05 - 5:20:37 PM GMT

📄 Email viewed by mcculloughgarvase@gmail.com
   2025-08-05 - 9:51:09 PM GMT

✍️ Signer mcculloughgarvase@gmail.com entered name at signing as Garvase G. McCullough
   2025-08-05 - 9:53:32 PM GMT

✍️ Document e-signed by Garvase G. McCullough (mcculloughgarvase@gmail.com)
   Signature Date: 2025-08-05 - 9:53:34 PM GMT - Time Source: server

✅ Agreement completed.
   2025-08-05 - 9:53:34 PM GMT